## FOSTER v. BETTSWORTH *et al.*

**Estoppel:** WAIVER OF EQUITIES IN SWAMP LANDS. Where, under a resolution of the board of supervisors authorizing any resident to register a claim to swamp lands offered for sale by the county, the defendants registered claims upon the tracts in controversy, and thereby acquired equities therein, but afterward agreed to accept other tracts instead, and subsequently plaintiff purchased the tracts in controversy, it was *held*, that defendants had waived their equities therein and that plaintiff's title was paramount.

*Appeal from Plymouth District Court.*

FRIDAY, OCTOBER 24.

SUIT in equity to obtain and quiet title in plaintiff to the southeast quarter of section 8, township 92, range 45. The land is swamp land, and the plaintiff claims to have acquired his right by contract of purchase under a resolution of the board of supervisors, on December 15, 1868. The defendants, Bettsworth and Cummickel, claim all but 40 acres of it by deed made them October 5, 1869, under the same resolution and by registry of their claim thereto before plaintiff's contract. The priorty of right is the question to be decided. So much of the facts as are necessary to decide the case are stated in the opinion, without stating the claims of the respective parties. The district court adjudged defendants entitled to the parcels claimed by them.

The plaintiff appeals.

*Joy & Wright* for the appellant.

*Marks & Pendleton* for the appellees.

COLE, J.—Without stating in detail the pleadings or claims of the respective parties, we simply announce the material ultimate facts as we find them, with our conclusions thereon.

The swamp lands of Plymouth county had been duly offered at public sale ; and on November 9, 1868, the board of supervisors by resolution declared that any actual resident of the county might purchase not exceeding eighty acres of said land at one dollar and fifty cents per acre, and pay the clerk for the same in cash or county warrants, or by his own note payable in two years with ten per cent annual interest, a lien being reserved for the purchase price. On December 15, 1868, Ladd and Martin, two actual residents of the county, pursuant to the resolution, purchased from the clerk the land in controversy, gave their notes and took the clerk's certificate of purchase, and entered into possession of the land. On the 7th of January, 1869, the clerk reported such sale to the board of supervisors, and they in regular session approved such sale, and the notes were delivered to the treasurer. On the 12th of March, 1869, this plaintiff purchased of each of said parties, Ladd and Marvin, his interest in said land, and took from them an assignment of the certificates of purchase and entered into possession of the land, and expended about thirty-five hundred dollars in permanent improvements. Most of the improvements, except about thirty acres of prairie breaking, were upon the south-east quarter of said tract. Afterward, and at the proper time, plaintiff offered to pay said notes and interest, and demanded from the board of supervisors a conveyance, which was refused.

The defendants, each of them, prior to the purchase of the land from the clerk by plaintiff's assignors, and under a previous resolution of the board authorizing any resident to register a claim to not exceeding 80 acres of the swamp lands of the county, had registered claims upon several tracts, and, among them, Bettsworth had registered the west half of the land in controversy and Cummickel had registered the north-east quarter of it. After the board had approved the sale by the clerk to the plaintiff's assignors, and at the same session, in January, 1869, these defendants, Bettsworth and Cummickel, presented their claims to the land to said board, and by order of the board the clerk issued certificates of purchase,

and afterward made deed thereunder, to each for the part claimed by him, but did not, so far as appears, cancel the other certificates, nor direct the return of the note. These defendants, several years before, but under what claim of right, if any, does not appear, had built a rick fence on part of said land, so as that the fence and the Floyd river inclosed a pasture field, which they had used more or less.

We find further, as a matter of fact, that before plaintiff's assignors made their purchase of the land in controversy of the clerk, Bettsworth had elected to take another eighty, registered by him, in section 9, and the clerk had issued to him a certificate of purchase and taken his note therefor; and also that Cummickel had elected to take his land in another section, and had told one of the plaintiff's assignors, Marvin, that he had no claim on the land in controversy and did not want any.

As conclusions of law, we find, that even if an equitable right was conferred upon defendants by the registry of their claims upon the land in controversy, it was waived by their election to take other lands and abandoning their claims upon this. That the determination by the board to issue certificates to defendants, for parts of the land, did not affect plaintiff's rights. That even if plaintiff and his assignors had notice of the defendants' claims to said land, it would not affect plaintiff's equity, because of defendants' waiver and abandonment of them. That plaintiff is entitled to a judgment conveying to him and settling and quieting his title to all the land. What, if any, are the rights of the defendants as occupying claimants, is a question not presented or decided, nor are their rights as such in any wise prejudiced hereby.

Reversed.